**Stephanye PEASE, Plaintiff,**

v.

**ALFORD PHOTO INDUSTRIES, INC. and Jimmy Alford, Defendants.**

**No. 84–2407–H.**

United States District Court, W.D. Tennessee, W.D.

July 17, 1987.

Stipulation And Consent Judgment Sept. 3, 1987.

---

Donald A. Donati, Memphis, Tenn., for plaintiff.

Hunter Lane, Jr., Memphis, Tenn., for defendants.

## MEMORANDUM AND ORDER GRANTING JUDGMENT TO PLAINTIFF

HORTON, Chief Judge.

This is a sexual harassment lawsuit by Stephanye Pease, plaintiff, against defendants Alford Photo Industries, Inc., and Jimmy Alford, President of the Memphis, Tennessee, based corporation. Mrs. Pease complains of unwelcomed, unwanted, unconsented to, sexually harassing and humiliating touching of her body by Mr. Alford in the work place. Mrs. Pease charges this unwelcomed touching culminated in Mr. Alford fondling her breast while she was at work on September 27, 1983. She claims that Mr. Alford engaged in similar type conduct against other female employees and they too were victims of unwelcomed and unconsented to touching by Mr. Alford. Mrs. Pease claims she was constructively discharged from her employment with Alfords Photo Industries, Inc., September 28, 1983, due to sexual harassment. She testified she received, over the objection of Mr. Alford, unemployment compensation from the State of Tennessee's Department of Employment Security. Mrs. Pease claims the defendants have engaged and continued to engage in unlawful employment practices against her in violation of § 703, Title VII, 42 U.S.C. § 2000e-2, by unlawfully sexually harassing her because of her sex and maintaining terms and conditions of employment which unlawfully operate to deny equal opportunities to females because of their sex. Mrs. Pease also asserts certain pendent state law claims, such as assault and battery, infliction of emotional distress, invasion of privacy and a claim for punitive damages.

Mr. Alford is President of a joint corporation in which there are two businesses, 1) Alford Photo Industries, Inc., and 2) Alford Studios. Mr. Alford and other members of his family are officers and employees of the corporation sued in this case, Alford Photo Industries, Inc. Mr. Alford denied that he ever sexually harassed Mrs. Pease in any way whatever. He testified if he touched her breast on September 27, 1983, it was an accident. He said she made no complaint to anyone about any sexual harassment until the day after he allegedly confronted her in a hallway and allegedly touched her breast. Mr. Alford admitted during his testimony that he had touched other female employees in various ways. However, he said most of those alleged acts occurred a number of years before the acts complained of by Mrs. Pease. He said a number of females were discharged for reasons of poor work performance or misconduct. He said they misrepresented or exaggerated such claims because of their dismissal from their jobs. Mr. Alford denies these touchings were sexual in nature. He claims he uses his hands a lot in communicating with people. He says he is a warm, friendly and affectionate person. He admitted engaging in a lot of hugging of female employees but considered it to be friendly acts of an employer. Mr. Alford said he thought sexual harassment was asking females to go to bed or go out with him. He said he only touched females he knew real well and that he never touched a "new girl." He said touching is a friendly thing, a way of saying I like you. He said what this world needs is a lot more touching and hugging.

The preponderance of the evidence shows that Mr. Alford indulged in a sexually harassing pattern and course of conduct toward Mrs. Pease and other females who were at the time employees of Alfords. That pattern and course of conduct consisted of touching, rubbing, fondling, stroking of hair, neck, shoulders, buttocks, grabbing of the upper inner thigh and other parts of the bodies of female employees on the premises of the work place during working hours. The preponderance of the evidence is that this sexually harassing conduct by Mr. Alford was unwelcomed, unwanted, unconsented to and humiliating to Mrs. Pease and similarly situated female employees.

The Court finds that Mrs. Pease has established, by a preponderance of the evidence, that she was the victim of *quid pro quo* sexual harassment by Mr. Alford and of sexual harassment which resulted from a hostile or offensive work environment. She is entitled to judgment against the defendants, the terms of which will be explained in the remedy part of this memorandum and order.

*Stephanye Pease* testified she started working at Alford Photo Industries, Inc., Memphis, Tennessee, on July 11, 1983. Initially, her pay was $3.85 per hour. After two weeks on the job her pay rose to $4.85 per hour. She worked forty hours each week. Before applying for work at Alford's, she had been employed at two other businesses, Color Master and Master Color, in Memphis, Tennessee. She has a GED certificate and attended Northwest Junior College, Southaven, Mississippi.

After she had been working at Alford's about two weeks, she met Jimmy Alford, president of the corporation. At that time she said about thirty people worked for the company. There were two male supervisors, and the other employees were female. During her first meeting with Mr. Alford, Mrs. Pease said it was just a friendly meeting. He talked with her about her prior employment and about her work. During a second meeting, about a week or so later, Mr. Alford tried to talk with her about her personal life. He asked her if her husband was employed. She replied he was not but was searching for employment. During a meeting, which occurred during the second week in August, 1983, Mr. Alford touched her. She said Alford entered the room in which she worked, approached her from behind, and put his hand on her shoulder and rubbed her on the arm. Mrs. Pease said she pulled away and they talked about her work. She said she did not consent to the touching and his touching her made her feel tense and nervous. Another time, Alford put his hand on her shoulder, upper back and rubbed her hair. She moved away and again talked about her work. She said this incident made her feel terrible and humiliated and she had no control over the situation. While she did not complain, she did not consent, just moved away. Again, when she was in the area where the employee time clock is located, she said Mr. Alford touched her. She said he approached her, started hugging her and she pulled away. She said this incident made her nervous and tense.

Mrs. Pease said the breast touching incident occurred on September 27, 1983. She said she met Mr. Alford at work in a hallway. She said Alford called her over to him. He asked her what she was doing. She said she showed him. Then he put his hand under her coat and fondled her breast. She said she pulled back. Mr. Alford looked angry. She said she was angry also. He then left the area and she went back to her office. Mrs. Pease said she was too upset to work and obtained permission from the plant manager, Steve Alford, to leave work early. She said she just told Steve Alford she needed to leave work early but did not tell him why. She said she sat in her car for a while then drove home.

When she arrived home, she told her husband what occurred. The following day, she returned to work and decided to talk with Steve Alford. She testified she told him that his father had been harassing her at work and that his father had fondled her breast. She said Steve responded by telling her he was shocked and sorry it happened and he did not want her to resign her job. She told him she did not want to resign as she needed the job. She also said

she did not want Steve to tell Mr. Alford because she had heard him argue with, curse and threaten other employees. After she had talked with Steve Alford in his office about fifteen minutes, she returned to her work.

About thirty minutes after her talk with Steve Alford, Mrs. Pease said Jimmy Alford entered her office. She said he appeared to be extremely angry because she complained to Steve Alford. He told her he would stay ten feet away from her and that he would forget about it. This, she said, upset her.

About one hour later, Jimmy Alford's wife, Mrs. Frieda Alford, vice president of the company, approached her. Mrs. Pease said Mrs. Alford appeared very angry because she had complained to their son Steve. She said Mrs. Alford asked her why did she want to make such a big thing of Mr. Alford's running into her in the hallway and touching her with his elbow. Mrs. Alford suggested that Mrs. Pease forget about the incident in the hallway. Mrs. Pease said she responded by telling Mrs. Alford her version was not what happened in the hallway.

Later that day after lunch, Steve Alford approached her and told her Mrs. Alford wanted to see her. She went to Mrs. Alford's office. Jody Alford was present. The door was closed. During that meeting, Mrs. Pease said Mrs. Alford told her she had witnesses in the room and she wanted Mrs. Pease to know she could not keep saying things about her husband. Mrs. Pease said she told Mrs. Alford what happened, that he touched her breast. Thereafter, Mrs. Pease testified, Mrs. Alford said all kinds of bad things would happen if she, Mrs. Pease, kept saying things. If she persisted, she would have to leave, and she would go with her to clean out her desk. She said Mrs. Alford also told her she should not try to collect unemployment. Mrs. Pease said she was escorted to her desk, then through the production area and out the back door. She sat in her car for a few minutes, as she was upset. She then decided to drive to Master Color where she applied for a job. That business did not

have a job vacancy for her. Mrs. Pease believes the touchings were of a sexual nature, and the touchings made her nervous and tense.

Mrs. Pease said that when she applied for unemployment compensation, Mr. Alford contested her application. There was a hearing at which a number of people testified, including Mr. Alford, Steve Alford and Mrs. Frieda Alford. She said she was awarded unemployment compensation at rate of $79.00 a week for twenty-six weeks.

Mrs. Pease testified to her efforts to obtain employment. In September, 1984, she obtained employment as a teacher assistant at a school in Mississippi where she was employed at the time of trial. She filed a timely charge with the Equal Employment Opportunity Commission on November 28, 1983, and that charge was later amended.

Mrs. Pease said she does not seek reinstatement but does seek front pay which she defined as the difference between what she would have earned and is now earning.

She said she suffers migraine headaches. She was constantly upset and tense, suffered skin rashes, upset stomach and was not able to sleep well at night. She said she was afraid she might be harmed in some way. She is still apprehensive and the whole experience has placed a strain on her marriage. She said she never encouraged Mr. Alford to touch her. She said the work environment at Alfords due to the touching, was extremely tense. People were on edge and often wondering what mood Mr. Alford would be in.

On cross examination, Mrs. Pease said there were four or five touching incidents. Mr. Alford rubbed her back and neck area while they were standing near the plant's time clock. Other times he rubbed her shoulder, neck, hair and squeezed her neck and fingered her hair. She said she never told him not to do that to her, but instead, just moved away.

She said she was afraid of Mr. Alford when he cursed in a loud voice. On one occasion, she observed Mr. Alford verbally abuse an employee, Diane Hughes, and it

was offensive to her to see Mr. Alford carry her across the plant's production room. She said she heard him threaten to hit employees but never did see him do that. Also, she said other women were sexually harassed by Mr. Alford. She named Suzanne Wallace, June Guy, Diane Hughes, Julie Campbell.

She said there were no explicit sexual overtures. There were no invitations to go outside the plant with Mr. Alford. He never said if you do not do so you will be fired. Her fear was just based on Mr. Alford's conduct.

She said that on September 27, 1983, she was carrying an 8 × 10 and wallet size materials when Mr. Alford stopped her. He called her over and asked her what she had. She showed him the work. He asked her about the wallet size. He said the negative retouching had been worked off. He handed the prints back to her and she accepted them. She said she was wearing a dress and a blazer like a laboratory coat. Mr. Alford reached out and fondled her breast. The fondling lasted less than a minute—the time she was not sure. It could have been a few seconds. Mrs. Pease said she was shocked, stepped back away from him and moved out of his reach. She said she was too upset and stunned to say anything. She said he looked angry. She was angry. He turned and left. She returned to her office. She thought about the incident, left early and went home.

During the later meeting with Mrs. Alford, Jody Alford and Steve Alford, Mrs. Pease said she was told by Mrs. Alford she could leave if she did not change her statements. Thereafter, she was escorted out of the premises.

Mrs. Pease said Jimmy Alford put his hands on her five (5) times. She felt her submission was a condition of her remaining in her employment. These touchings caused her tension.

*James Alford,* sixty-four, testified that he has been married to Mrs. Frieda Regan Alford thirty-six years. They have three sons, West, Steve and Jody. During the busy season, his company employs about fifty female employees, during the non-

busy season, about eighteen to twenty female employees. He said there are about twelve male employees. He maintains a friendly relationship with all employees. The work is not hard but tedious. His business is very competitive. He must stress service and quality. He manages by walking about the plant and knows many employees on a first name basis and helps them with personal difficulties.

Mr. Alford admitted that he has put his hands on female employees' shoulders. He said he liked them. The female employees reciprocate and do the same thing and no one thinks anything about it. He has rubbed their shoulders while they sat at a printer. He said none of the touching has been sexually motivated. No other females, except Pease, have expressed any resentment. He says the employees are a real jovial and happy group. Female employees have hugged him. Two, Julie Campbell and June Gafford have sat in his lap, like nine years ago. He said he has never asked a female employee to go to bed with him or to go out with him. He said he has never made sex a condition of employment. He said his wife is all over the plant just as he is. He said he did not recall touching Suzanne Wallace in a dark room. She was terminated due to a lack of work qualifications.

Mr. Alford testified regarding each of the following female employees:

*Mrs. Stephanye Pease*

Mr. Alford said Mrs. Pease was hired as a print spotter. It is tedious work done under a magnifying glass. He said they paid a person to train Mrs. Pease to do the work, which is an art. Negatives are retouched to remove disfigurements, moles, acne and other defects from faces by retouching prints.

Mr. Alford denied that he touched Mrs. Pease's shoulder and neck before September 27, 1983. He said he did not hug her anywhere. He said he had very little contact with Mrs. Pease and never spoke over thirty words to her.

On September 27, 1983, he said he remembered her coming through a hallway.

She said she had an 8 × 10 and nine wallets and possibly a 16 × 20. She walked up and showed it to him. He said he does not remember touching her at all. He said he first learned about Mrs. Pease's complaint the next morning when his son Steve told him Mrs. Pease had reported he touched her breast the day before. He said he then went to talk with Mrs. Pease and asked her when the incident happened. Mr. Alford said Mrs. Pease said nothing and did not look up. He said he told her if he touched her he apologized. He said he did not know how or when it could have happened. He said he did not yell or intimidate her and she never responded. That was his last contact with her. Mr. Alford said he attended a hearing before an unemployment compensation board. When the hearing officer asked Mrs. Pease what happened, she testified Mr. Alford fondled her. He responded by telling her that it was a damn lie and he walked out of the hearing.

Mr. Alford said he told the Tennessee Department of Employment Security the following:

If I touched her, it was accidental. My elbow may have accidentally touched her on the breast. I contend and I still contend I never touched the lady's breast.

Mr. Alford said he does not hug anybody. He said he would "lay my hands on their shoulder and that is not hugging." He said he has rubbed the backs and shoulders of three or four female employees while they were sitting at a printer. He has rubbed the backs of a number of female employees, people he is on good terms with.

### June Gafford

Mr. Alford denied that he grabbed Ms. Gafford on the inside of her upper thigh. He said he did not put his arm around her shoulder. He said she "cut up" a lot and they kidded each other. He said she was a mediocre worker. She was not fired but quit to earn more money elsewhere. He said he always had a good relationship with Ms. Gafford and had no idea why she testified the way she did.

### Diane Hughes and Carmen Null

Mr. Alford testified he probably did hug these two female employees every day. He said he was talking about walking up and laying hands on shoulders. He said he did not hug Louise Harding every day.

Mr. Alford said he put his arm on the shoulder of Diane Hughes perhaps three or four times per week, as to Kay Smith, perhaps two to three times weekly.

He said he rubbed the shoulder of Janice Hart once or twice weekly if she asked him to do so. He said if Debbie Hopper said he did, then he did.

### Cynthia Gray

Mr. Alford said he had no recollection of ever grabbing Mrs. Gray on the rear end and breast. He said he could not remember her working for the company. He said he did not pinch Reba Lee on the side next to her breast. She quit, was not fired.

### Julie Campbell

Mr. Alford said he touched Mrs. Campbell's neck and shoulders when she asked him to do so. He denied touching her by patting her on the rear end and pinching her on the inner thigh. He said Ms. Campbell was good at her work and did a good job.

He denied grabbing Suzanne Wallace in a dark room. He said he could have pulled Jeanette Hardy's hair. He said he was never around a time clock with her.

Mr. Alford said he thought sexual harassment was asking someone to go to bed with him or go out with him. He said he only touched females he knew real well and he never touched a new girl. He said this world needs a lot of touching. It is a friendly thing, a way of saying I like you. This world needs a lot more touching and hugging. He said he did not take it he had their consent. He said he took it they were good enough friends. He said he saw nothing wrong with a pat on the back. If an employee complained, it would never happen again.

Stephen Allen Alford, twenty-eight, plant manager of Alford Photo Industries, testified that on September 28, 1983, Mrs. Pease spoke with him saying that she had

something to tell him. They went into an office where she told him his father had touched her breast. He said he asked her if the touching was accidental. She requested a pink slip for unemployment compensation purposes. When he told his father about the accusation, his father was shocked and responded that he was sure there was nothing to it and he would talk with Mrs. Pease. Later that same day he was in his mother's office, along with his brother Jody, when his mother talked with Mrs. Pease. He said his mother's information was that Mr. Alford's elbow had brushed up against Mrs. Pease. He said Mrs. Pease informed them she would leave her employment. Thereupon, his mother informed her that if she was resigning that day, she may as well leave then. He said Mrs. Pease was not discharged. He said during this meeting Mrs. Pease was demure in her manner and mostly looked down at the floor. Before Mrs. Pease's complaint, he had not heard of any sexual harassment. He had never witnessed anything indicating improper conduct. He did not recall any sexual harassment complaint by Reba Lee against his father. He said the work force is a happy group; thirty to forty percent of the employees have been with the company over eight years. He said Mrs. Pease was a good worker and company officials were quite pleased with her.

Steve Alford denied hearing his mother tell Mrs. Pease that if she continued making the accusation she would have to leave the company. He said at times he did see his father massage shoulders and necks and put arms around female employes, but he did not see any of them react with displeasure. This is the first sexual harassment complaint they have ever had.

*Mrs. Frieda Regan Alford* testified she and Mr. Alford have been married thirty-six years. They have three sons, West, Steve and Jody. She said they all work together in the company. She was acquainted with Mrs. Pease.

Mrs. Alford said that on September 28, 1983, Mr. Alford reported to her that Mrs. Pease was going to quit her job because she said he touched her bosom. He said he had talked with Mrs. Pease and did not know anything had happened. After hearing about this incident, Mrs. Alford said she wanted time to think about it. Later, she said she went to Mrs. Pease, knelt down beside her and said that Mr. Alford said she was quitting because she said he had touched her bosom. Mrs. Alford said Mrs. Pease said nothing. She then asked Mrs. Pease if she supposed it happened by Mr. Alford reaching across her and brushed against her. Mrs. Pease responded by saying that was not the way it happened. Mrs. Pease said nothing else.

Mrs. Alford said during the afternoon, after lunch, she called Mrs. Pease into her office and asked her to tell what happened. Mrs Alford said Mrs. Pease said that Mr. Alford's elbow hit her bosom. Mrs. Alford then said she asked Mrs. Pease if she understood that Mrs. Pease was leaving her job with the company because Mr. Alford's elbow touched her bosom and Pease responded yes. Mrs. Alford said she asked Mrs. Pease a third time if she was leaving our employment because her husband's elbow touched her bosom. Again Mrs. Pease responded yes. She said Mr. Alford stated it was possible he could have touched Mrs. Pease by accident.

Mrs. Alford said she never had any information Mr. Alford had any tendency to touch the female employees. She said no female employee complained to her about sexual harassment by Mr. Alford. She has never seen him do anything offensive to a female employee. She said she has seen him touch female employees non-affectionately. She said they are a touching people, put hands on or arms around a shoulder. She has seen him touch and be touched. She said they try to create a good atmosphere for their employees and for themselves.

Testifying on cross examination, Mrs. Alford said she had seen Mr. Alford massage the neck of female employees sitting at a printer. She has not seen him put arms around a female at a printer. She has not seen him pinch female employees on an inner thigh. She has not seen him put his

hand on the inner thigh of a female employee at the point where the legs join the body. She said she did not fire Mrs. Pease. Later, she learned Mrs. Pease made this accusation for the purpose of getting unemployment compensation. She said Steve had said one way to get unemployment compensation is to claim sexual harassment.

Mrs. Alford denied escorting Mrs. Pease to the door. She said she did not know when Mrs. Pease left, and Mrs. Pease did not ask for a termination slip. She just quit.

*June Caldwell Gafford,* testifying by deposition, said she worked for Alford Photo Studio Industries for about three months in 1977. She said she left her employment there because she did not like the atmosphere and the pay. She said she sent a statement to the Equal Employment Opportunity Commission on January 20, 1984.

She said Mr. Alford touched her without her consent by just walking up and grabbing her real tight. She said it was embarrassing for him to grab her real high up the top part of her inner leg and made her very uncomfortable. She said he wanted to know what was wrong with me. She said the other touching just offended her but this one time made her real mad. She said he grabbed her a second time, this time tighter. She said she picked up his hand, put it down and walked away. She said he grabbed the very top inside of her right leg with his right hand. She said she saw him touch a woman named Reba Lee on her breast. She said she did not like it and just quit.

*Julie Campbell,* thirty-three, testified she worked for Alford's at the lab on two separate occasions, 1976–1977 and 1979–1980. She testified Mr. Alford touched her on two unwelcomed occasions:

1) Mr. Alford pinched her on her upper inner thigh. It was close to her private parts and occurred in the 1979–1980 employment period. She said she thinks this touching was of a sexual nature.
2) He embraced her from behind. When he did so, he said let me give you a big hug. She said she did not think this touching was sexual in nature, just unwelcomed.

She said she talked with a man named David Riggs who was then plant manager. She said she asked him to talk with Mr. Alford. She said the plant manager responded by saying "I know, I know."

Mrs. Campbell said she did not like the way Mr. Alford touched her and wanted the plant manager to tell him to stop. She said she talked with Mr. Alford about his unwelcomed touching of her.

Mrs. Campbell said she saw Mr. Alford touch the breast of a woman from Brazil who became upset and resigned her job. She later heard the touching was accidental and Mr. Alford was only attempting to show her something. She said she did not feel threatened but uncomfortable. She said the word was out among the female employees: "Don't let Jimmy get you in the dark."

On cross examination, Mrs. Campbell said she could not remember but could have sat on Mr. Alford's lap. She said the environment was a happy relationship at times. At times, it was tense. She said there were times when Mr. Alford was kind and generous. However, she felt the unwanted touching was enough to make the women employees uncomfortable.

At one time, she said she was alone with Mr. Alford and he jokingly said something about extra marital sex being fine. She said there was no specific proposition. She told him she did not know and ended that conversation.

*Cynthia Diana Gray,* testifying by deposition, said she was employed by Alford's in the Memphis photo lab from July to August, 1976. She said during her employment Mr. Alford touched her in two places he should not have touched her. She said on one occasion he touched her on her rear end. She said it was a grab. The second time, he touched or grabbed her on her right breast. She said it was from over her shoulder. She said she told him to move his hand. He did not say anything. She said she felt real indignant. She said when she told him to take his hands off her he

denied that he touched her. She said these were incidents not accidents. She said Mr. Alford was ruthless and very domineering. She said she was very embarrassed about the situation and walked out the door that day. She returned about two days later to get her check for unpaid wages. She said she did not know Mrs. Pease, the plaintiff.

She said she made no complaint as it was embarrassing to her. She said Mr. Alford never made any verbal approach to her. She said she left as a direct result of being sexually harassed by Mr. Alford. She said Mr. Alford was ruthless, unsociable and she considered his touching her obscene. Aside from these two incidents, the atmosphere in the plant was friendly.

*Suzanne Evett Wallace* testified she worked at Alford's for about ten and a half months in 1982 and 1983. At that time, she was employed as a custom printer and was about twenty years of age. She said she saw Mr. Alford touch female employees. She said he grabbed her around the neck and said that he was going to get her one of these days. She said she responded "no you are not." This occurred only that one particular time. She said he came into the lab, put his arm around her waist and started talking about something. She thought these acts were sexual in nature. She said she did not want him around her as he had an intimidating nature. When he came around, he caused her to feel tense and disrespectful. She said she was afraid to say anything to him because he had been sharp with her once or twice. She said she just did not want to make trouble or lose her job. She said she had heard him curse other employees, including his own family members. He upset people. She said she was terminated for slow work.

During cross examination, she testified Mr. Alford rubbed down toward her side and hip. This touching lasted not more than a couple of minutes. He did not "put the make" on her. She said employees at Alford's were about ninety-five percent female, and it was the worst place to work because of Mr. Alford's conduct.

*Terry L. Payne* testified she worked for Alford's in 1979 or 1980 in the Millbranch office in Memphis as a custom printer. On one occasion, she said Mr. Alford pinched her knee from behind but she did not consider it offensive. She said she saw him touch other women employees. She said he would hug them, pat them on the rear and put his arm around them. She said that was common and happened regularly. She said she saw Mr. Alford hug one woman from the rear as she sat at a printing machine. She told him to back off. She said most of the women tried to avoid him. She said the work environment was uncomfortable. She said Mr. Alford never really made a pass at her but she felt bad for the other girls. She thought the touching was unnecessary as they were there to do a job.

On cross examination, Ms. Payne said she had never met or worked with Mrs. Pease. She said she never saw Mr. Alford touch women employees when his wife was present. She did see him touch women on the back but did not consider it sexually offensive. She never saw any women touch Mr. Alford. She said she did not see Mr. Alford hug older women. She again stated the work environment was generally uncomfortable. She said she thought women have to make their own decision about this kind of conduct. She said it was unnecessarily affectionate for the work place.

*Carson Lewis Owen*, senior trial attorney, Equal Employment Opportunity Commission, Memphis, Tennessee, testified the EEOC file contained eight (8) other complaints, other than the charging party, against Mr. Alford. He said all of the complaints concerned unwelcomed touching of females by Mr. Alford.

*Reba Lee* testified she worked for Alford's about three years, from late 1970 until August, 1981, when she resigned. During her employment, Mr. Alford touched her two or three times without her consent. She said he rubbed her neck and tried to tickle her. She said she thought those touchings were sexual in nature. She said he never requested any sexual favors or asked her out with him. She said he massaged her shoulders which she felt was unnecessary. She said it made her nervous. One time, she asked him what he

would think if his wife found out about it. She thought the touching affected the work environment and made it difficult for her to do her job. She denied she had ever put her hands on Mr. Alford and said she absolutely/positively did not grab anyone by the crotch. She said she told Steve Alford his father put his hands on female employees and she felt it was sexual in nature. Finally, she said she did not really want to testify in federal court.

*Claire Voisine*, thirty-two, testified she was employed at Alford Photo Industries from September, 1980, until November, 1981. She said Mr. Alford put his hand on her. She said he put his hand on her shoulder, pushed her hair back and she thought he attempted to kiss her on the neck. She said she rebuffed him and he backed off. She said he had once snapped her bra strap. She told him to quit it. She said he would grab her on the sides and she would clamp her arms down. She said he was always doing things like that. She said he would pinch, put his arms around her and squeeze very hard. She said she did not like it and told him to stop. She tried to avoid him. She said Mr. Alford's conduct made her feel pretty low. She saw it all the time she was there. She said he never asked her to sleep with him. This conduct was not a condition for the job or job advancement.

*John Paulson*, testified he worked for Alford Photo Industries from 1975 to 1982 or 1983. The last three years he was manager of the plant supervising forty to fifty employees, mostly female. He said Reba Lee, Claire Voisine, Julia Campbell, Suzanne Wallace, Terry Payne, Diane Hughes and Linda Rucker all worked under his supervision. He said he never had any of these women come to him and complain about sexual harassment. Mr. Paulson said it was a very pleasant place to work. He admitted he had seen Mr. Alford hug "girls" and they would hug him right back. He said Mr. Alford's relationship with employees was informal. He was pleasant with them and on a first name basis with them. He said there was a lot of laughing and cutting up. He said he never heard Mr. Alford curse an employee but did see him "chew employees out." He said Mr. Alford could get riled up.

Mr. Paulson said he was twenty-nine years of age and a close friend of Mr. Alford's son, Steve Alford. He said he visited with the Alford family, spent nights in the Alford home and Mr. Alford gave him his first real job.

Mr. Paulson said he did not think the people working at Alford's were high class people. He said they were just minimum wage people. He said they were the kind of people he would not believe if they told you something.

*Ken Shoup*, owner of Color Master, testified he had an employee named Donna Dornsteadter and was visited by Mrs. Pease who applied for a job with his company. At first, he said he offered her part-time work and later offered her a job full time. He said Mrs. Pease declined as the job did not pay enough money.

When asked why the job application had a *big red no* on it, Mr. Shoup said it was a reminder to him not to employ that applicant.

*Donna Dornsteadter*, testified she has been employed with Color Master for eight years. She said that on September 28, 1983, Mrs. Pease applied at Color Master for a job. She said she had just walked out at Alford's due to sexual harassment by Mr. Alford. She wanted names of women who had worked at Alford and who had left employment there because of sexual harassment.

Mrs. Dornsteadter testified Mrs. Pease said she was nudged with an elbow. Later she acquired knowledge that Mrs. Pease had changed her story from what she had told her.

*Lottie Bennett*, twenty-nine, testified she worked in the room adjacent to Mrs. Pease. She said Mrs. Pease never told her about any unwelcomed attention from Mr. Alford. Mrs. Bennett said Mrs. Pease did not appear to her to be tense or nervous. She appeared to be happy. She did not complain about work and appeared to be a steady worker.

*Velma Churchwell,* testified she worked at Alfords for six years and she has seen no improper or sexually motivated conduct by Mr. Alford. She said it was not unusual for any female to hug Mr. Alford's neck. He is friendly. He is all over the plant. He laughs and jokes a lot. She has never heard him curse anyone. If an employee makes a mistake, he will tell that employee about it in no uncertain terms. He lets it out and then it's over.

Mrs. Churchwell said she has never seen anyone pull away from him or act offended when he hugged and patted them. She said she is not close to the younger women in the plant and does not associate much with them.

*Diane Hughes,* thirty-one, testified she had worked at Alfords six years. She said she has never observed Mr. Alford engaged in improper conduct or sexually motivated conduct. She said he has hugged her and she has hugged him. She said she never heard any complaint about sexual harassment. She said the work environment is not tense but pleasant. She said Mr. Alford is a friendly straight to the point man.

*Maxine Wilkins,* forty-six, testified she has been employed at Alford Photo Industries seventeen or eighteen years. She said she is called the "Ann Landers of Alford." She said about seventy percent of the employees there are female. She said she has not seen Mr. Alford engage in any physical touching of any female employee she considered improper or sexually motivated. While she has seen Mr. Alford touch the shoulder of female employees, he has done nothing to create a poor working environment. She said she thinks the Alfords care for their employees. She said Terry Payne is outspoken in her hatred for Mr. Alford.

*Linda Ann Morris,* forty-four, testified she has been employed four times at Alfords, twice seasonally and twice permanently. She said she knows June Gafford, Reba Lee, Claire Voisine, Cynthia Gray, Julia Campbell, Suzanne Wallace and Terry Payne. She said she did not know Mrs. Pease. She said if these female employees show up late for work, or do not come in at all, they reacted to Mr. Alford's attitude about that. She said June Gafford was a real flirt. On one occasion, she saw Gafford jump into Mr. Alford's lap in front of everybody. She said Gafford just plopped herself down on his lap, hugged him, and he just put up with her. She said Mr. Alford hugs people, men and women. She said she had never seen him rub a female's back but had seen him touch them on the shoulder and massage the neck. He once did it to her real hard and then said, "Get to work, girl." She said Mr. Alford has always been like a father image to her. A couple of times he rubbed her neck. She said if he wanted to do it, he could. She said it was no big deal. There was nothing personal meant about it. She said she never saw any instances of sexual harassment. The work environment was a very happy place. She said that we work hard for our money and we are very proud of our work.

*Clara Ballard,* forty-seven, testified she had worked for Alford's ten years primarily as bookkeeper and helps in all departments. She said Mr. Alford has made loans to employees, including Claire Voisine who borrowed $450.00 and still owes Mr. Alford $94.00.

She said she was acquainted with Julie Campbell. She saw Campbell sitting on Alford's lap. She said Alford was at his desk and Campbell just walked up, sat on his lap and put her arms around him. She said she has seen Mr. Alford massage females on the shoulders but did not know of any of them being offended. She said no one has been fired or quit, to her knowledge, due to sexual advancements. She said the place is generally happy, like one big family working together. She heard Terry Payne once say she hated Alford's guts but did not say why. She has seen him lose his temper, never heard him use a lot of curse words. He is generally a happy person.

Mrs. Ballard said that at the unemployment compensation hearing, Mrs. Pease testified Mr. Alford put his hand on her breast. She said Mr. Alford testified he could not remember touching her, but if he did, it was purely accidental.

*Carmen Null,* twenty-three, assistant manager of Jimmy Alford Studio's, testified the employees are all one big family and were pretty close. She has seen no sexual harassment nor heard a female employee complain about sexual harassment. She said Mr. Alford has hugged her, but most of the time it's someone hugging him. She said Mr. Alford is very friendly and real nice to employees. Once she said a "new girl" hugged him and said, "I'm twenty-one today."

She said she has heard no employee express fear of Mr. Alford who is well liked by all employees. She said she has a close relationship with the Alford family. They treated her like a daughter. She said Mr. Alford has hugged her, put his arms around her. She has seen him hug and put arms around other female employees but did not consider it offensive.

*Stanley Stebner,* thirty-six, testified by deposition that he was a plant manager for Alford's Photo Industries and supervised ten to fifteen employees. He said Mr. Alford was president of the company and was in the plant four or five times weekly.

He said he is familiar with Mrs. Pease. He hired her. She was a spotter in a lab. He said she did an excellent job and was a dependable and hard worker. He received no complaints about her work. He said sexual harassment or sexual discrimination was never mentioned at Alfords.

He said Mr. Alford would walk up to women and give them a big hug. He never saw Mr. Alford kiss any women on the lips. He said some of the women were upset about Mr. Alford's hugging and embracing them. He said the women just informed him what happened. He said Mr. Alford would pat them on the back and hug them. He said Alford hugged them and they were uncomfortable. He said he did not personally see Mr. Alford do anything he considered to be improper.

*Conclusions of Law.*

The parties to this lawsuit stipulated in the pretrial order, filed May 29, 1986, the Court has jurisdiction of this lawsuit. All agreed that harassment on the basis of sex violates Section 703 of Title VII, 42 U.S.C.

§ 2000e et seq. While the defendants contested the Court's exercise of jurisdiction over the pendent state law tort claims of assault and battery, intentional infliction of emotional distress, outrageous conduct, and invasion of privacy, jurisdiction is not denied. Matters pertaining to this aspect of the Court's jurisdiction were decided by the Court and stated in its order filed April 16, 1986.

Title VII forbids employment discrimination on the basis of sex. 42 U.S.C. § 2000e–2(a); *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1973). Sexual harassment is a violation of Title VII. *Rabidue v. Osceola Refining Co.,* 805 F.2d 611 (6th Cir.1986); *Highlander v. K.F.C. National Management,* 805 F.2d 644 (6th Cir.1986); *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982). The definitive guideline generally accepted by the federal courts on what constitutes sexual harassment is stated in 29 C.F.R. 1604.-11(a):

> Harassment on the basis of sex is a violation of Section 703 of Title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitutes sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

Mrs. Pease claims the evidence she presented to the Court established a prima facie case of 1) quid pro quo sexual harassment and 2) sexual harassment which results from a hostile or offensive work environment. She argues Mr. Alford's denial that he sexually harassed her in any way whatever is not believable when weighed against the totality of the evidence in the trial record. She also argues Mr. Alford's articulated reason, i.e., that he did not sex-

ually harass her and if he touched her breast on September 27, 1983, it was an accidental touching with his elbow, is pretextual. The Court agrees. Mrs. Pease has met the burden of proof required by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Title VII provides relief for 1) quid pro quo sexual harassment; and 2) sexual harassment which results from a hostile or offensive work environment. *Rabidue v. Osceola Refining Co.*, 805 F.2d at 611.

*Quid Pro Quo Sexual Harassment*

■ To prevail on a quid pro quo claim of sexual harassment, Mrs. Pease must assert and prove 1) that she was a member of a protected class; 2) that she was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was based on sex; 4) that her submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that her refusal to submit to a supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability.

■ The preponderance of the evidence shows that Mrs. Pease was a female member of a protected class. She was subjected to unwelcomed sexual harassment by Mr. Alford in the form of sexual advances. The Court finds Mr. Alford touched Mrs. Pease in unwelcomed ways several times before he touched or fondled her breast on September 27, 1983. She presented credible evidence by seven other female witnesses, former employees of Alford's, who testified to sexual harassment by Mr. Alford. Mr. Alford admitted that he touched and hugged female employees but he considered his conduct to be the friendly acts of an employer. The harassment Mrs. Pease complained of was based upon her female sex. When Mrs. Pease rejected the unwelcomed touching of her body by Mr. Alford and complained to the plant manager, that complaint set her on a journey to a tangible job detriment which she suffered. Mr. Alford confronted her on September 28, 1983, and during the conversation told her he would stay ten feet away from her. She felt intimidated. Mrs. Alford attempted, by way of suggestion, to get Mrs. Pease to admit Mr. Alford accidently touched her breast with his elbow. Instead, Mrs. Pease did not succumb to suggestibility. She told Mrs. Alford that was not the way it was. When this approach did not work, Mrs. Alford told Mrs. Pease she could not remain in their employ if she did not stop saying things about Mr. Alford. The result was Mrs. Pease was escorted from the premises. She lost her job. The Court finds she was constructively discharged. It appears to the Court Mrs. Pease, in order to keep her job, would have had to keep quiet about Mr. Alford's unwelcomed touching. *Highlander v. K.F.C. Nat. Management Co.*, 805 F.2d at 644.

*Sexual Harassment Resulting From Hostile Or Offensive Work Environment*

■ Mrs. Pease's cause of action charging a sexually hostile work environment must be evaluated within the five part test stated in *Rabidue*. The Court has already stated she was a female member of a protected class. She was subjected to unwelcomed sexual advances and physical conduct of a sexual nature by Mr. Alford. Seven other former female employees testified to similar conduct by Mr. Alford. Terry L. Payne testified the work environment at Alford's was generally and unnecessarily affectionate for the work place. A witness for Mr. Alford, John Paulson, a former manager and supervisor testified he did not think some of the people working at Alford's were high class people, were minimum wage people and were the kind of people he would not believe. The Court finds this testimony reprehensible. The Court closely observed the manner and demeanor of each woman testifying. The seven women testifying on behalf of Mrs. Pease had no personal interest in the case other than triumph of the law protecting women from unwelcomed sexual harassment in the work place. The harassment complained of was based upon sex. The charged sexual harassment did have the

# 1202

effect of unreasonably interfering with Mrs. Pease's work performance. It did create an intimidating, hostile and offensive work environment. Subjecting female employees to such a pattern and course of sexually harassing conduct would obviously affect their psychological well being. No reasonable person could find otherwise. The totality of the circumstances demonstrated by the evidence in this record leads to only one inescapable conclusion: Mr. Alford engaged in a pattern and course of sexually harassing conduct toward his female employees that was unwelcomed by them, and his conduct violated the laws of the United States and the state of Tennessee. While this conduct may have been a source of fantasy and amusement to Mr. Alford, it was unwelcomed and humiliating to his female employees. Apparently, Mr. Alford thought he was at liberty to sexually harass female employees with impunity so long as, he testified, he did not ask them to go to bed with him or go out with him. The whole body of evidence in this case shows that Mr. Alford never crossed the threshold, set in his mind, of asking any female employee to go to bed or go out with him. This circumstance, the Court finds, indicates Mr. Alford acted intentionally and deliberately.

*Remedy*

■ Defendants argue plaintiff is not entitled to any relief by way of damages of any kind because the proof failed to show any touching of Mrs. Pease by Mr. Alford. The findings of the Court, based upon a preponderance of the evidence, are directly contrary to this position. Further, defendants argue that if the Court finds Mrs. Pease is entitled to any compensation for lost wages it should be limited to the period of September 28, 1983, to November 15, 1983. Defendants claim Mrs. Pease was offered a full-time job at Color Master on November 15, 1983, at $3.60 per hour. The Court does not accept as credible the testimony of Mr. Kenneth Shoup on this question of whether Color Master offered Mrs. Pease a full time job on November 15, 1983. The application for employment completed by Mrs. Pease on September 28,

1983, has a notation on page 2, the back page, reading:

called 10/21 said full time only called with full time @ $3.60 said no—more money.

However, the face page of the application has on it the word "no" written in very large red letters with an exclamation mark. The Court concludes the testimony of Mrs. Pease that she was not offered a full-time job by Color Master is the most credible testimony. Mr. Shoup was aware of the sexual harassment charge against Mr. Alford. The Court concludes the preponderance of the evidence shows Mr. Shoup decided not to employ Mrs. Pease for that reason.

Mrs. Pease claims she is entitled on her Title VII claim, to back pay, front pay for five (5) years, prejudgment and post-judgment interest. On her pendent state law tort claims, Mrs. Pease claims she is entitled to $25,000 in compensatory damages and $100,000 punitive damages. The Court finds these claims to be somewhat exaggerated and unreasonable.

■ The Court therefore concludes Mrs. Pease on her Title VII claims is entitled to back pay from October 1, 1983, to July 17, 1987. The Court credits the testimony of Mrs. Pease, as demonstrated in trial Exhibit 3, that she is entitled to back pay in the amount of $20,608.65 from October 1, 1983, to October 31, 1986. The Court instructs the parties to attempt to stipulate the balance of the back pay due from November 1, 1986, to July 17, 1987, the date of the judgment in this case. The Court awards Mrs. Pease post judgment interest from the date of the entry of the judgment calculated in accordance with 28 U.S.C. § 1961(a).

■ A claim of constructive discharge must be decided on the facts of the particular case. In this circuit, a finding of constructive discharge requires the determination that working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. Proof of discrimination alone is not a sufficient

predicate for a finding of constructive discharge. There must be other aggravating factors. Sexual harassment was an everyday fact at Alford's Photo Industries, Inc. Mr. Alford was the actor. Aggravating factors are adequately reflected in the record. *Geisler v. Folsom,* 735 F.2d 991 (6th Cir.1984).

■ In the exercise of its informed discretion, the Court awards Mrs. Pease front pay for a period of one year beginning with the date of the judgment in this case, July 17, 1987. Front pay has been defined as an affirmative order designed to compensate a plaintiff for economic losses that have not occurred as of the date of the court decree, but that may occur as the plaintiff works toward her rightful place. Front pay is simply compensation for the post judgment effects of past discrimination. The Court finds an award of front pay in this egregious case will aid in ending the sexual harassment of women at Alfords Photo Industries, Inc., and will aid in rectifying the harm caused Mrs. Pease. *Shore v. Federal Express Corp.,* 777 F.2d 1155 (6th Cir.1985).

The Court contemplates front pay in this case as being the difference between what Mrs. Pease earned during the year in her present employment and what she would have earned had she not been constructively discharged from Alford's Photo Industries, Inc., by Mr. Alford's sexual harassment. In order to determine the amount due, counsel for Mrs. Pease will submit to counsel for the defendants evidence showing what her actual earnings were at the end of the one year period. Defendants will submit, through their counsel, to counsel for Mrs. Pease the pay schedule for retouchers employed by defendants during the year. The parties will then stipulate what the pay difference is and an order will be entered by the Court. Of course, nothing prevents the parties from projecting this one year tabulation and concluding the matter anytime prior to the end of the one year period.

■ Turning to Mrs. Pease's state law tort claims of assault and battery, intentional infliction of emotional distress, invasion of privacy and outrageous conduct, the Court finds that Tennessee law allows a Court to award both compensatory and punitive damages for the offense of assault and battery. *Sullivan v. Morrow,* 504 S.W.2d 767 (Tenn.App.1973). The tort of outrageous conduct is recognized by the state of Tennessee, *Medlin v. Allied Investment Co.,* 217 Tenn. 469, 398 S.W.2d 270 (1966). The Court finds the evidence in this record shows that Mr. Alford committed an assault and battery upon Mrs. Pease on September 27, 1983, and prior thereto. The preponderance of the evidence also shows Mr. Alford's conduct was outrageous within the contemplation of Tennessee law. His conduct is not the kind of conduct tolerated in a civilized society and his conduct resulted in serious mental injury to Mrs. Pease. There was obviously an invasion of Mrs. Pease's privacy. She suffered emotional and psychological injury resulting from Mr. Alford's conduct which victimized Mrs. Pease. The Court therefore finds Mrs. Pease is entitled to compensatory damages in the amount of $2,500.00, and to deter the defendants from such conduct in the future and redress the wrong to Mrs. Pease the Court awards her $10,000 punitive damages.

It is therefore, by the Court, Ordered that plaintiff Stephanye Pease, is hereby awarded judgment against the defendants, Alfords Photo Industries, Inc., and Jimmy Alford jointly and severally, as follows:

1) Back pay in the amount of $20,608.65 for the period from October 1, 1983, to October 31, 1986. In addition, Mrs. Pease is awarded back pay for the period from November 1, 1986, to July 17, 1987.

2) Front pay for a period of one (1) year beginning July 17, 1987.

3) Compensatory damages in the sum of $2,500.00 and punitive damages in the amount of $10,000.00.

4) Post-judgment interest calculated in accordance with 28 U.S.C. § 1961(a).

In addition, the defendants will pay plaintiff a reasonable amount of attorney's fees and expenses. Accordingly, plaintiff's counsel is directed to submit to the Court within thirty (30) days from the date of this

order affidavits setting forth reasonable fees and expenses. Defendant may respond to such affidavits, if they so choose, within fifteen (15) days of receipt of the affidavits.

## STIPULATION AND CONSENT JUDGMENT

It appearing to the Court, as evidenced by signature of counsel for the parties, that the parties have consented to a resolution of all claims arising out of this case. The parties, though counsel, have stipulated to the amount of damages to be paid by the Defendants as well as the reasonableness of attorney fees and costs incurred by the Plaintiff. The parties seek entry of a judgment to resolve all issues in this litigation.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that Defendants shall tender to, or on behalf of Plaintiff and/or her attorneys, the following sums, separately or aggragately, on the dates set forth below in settlement of all claims between the parties including all claims of costs or attorney fees:

(a) On or about September 10, 1987,

(1) A payroll check in the gross amount of $10,000, in partial satisfaction of the backpay claim by Plaintiff;

(2) A check in the amount of $10,000, in partial satisfaction of the compensatory damages claimed by Plaintiff; and

(3) A check in the amount of $15,000, in partial satisfaction of attorney fees and costs claimed by Plaintiff.

(b) On or about February 10, 1988,

(1) A payroll check in the gross sum of $10,608.65, in full and final satisfaction of the backpay claimed by Plaintiff;

(2) A check in the amount of $7,500, in full and final satisfaction of all compensatory damages claimed by Plaintiff; and

(3) A check in the amount of $15,000 in full and final satisfaction of the attorney fees and costs claimed by Plaintiff.

2. The Court shall retain jurisdiction of this matter until February 15, 1988 in order to enforce the provisions contained herein.

On February 15, 1988, the Judgment will be vacated.